UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-03520-MRA-PD | Date | March 31, 2025 |
| Title | United States of America et al. v. Sterling Hospitalist Medical Group, Inc. et al. | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Gabriela Garcia | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING IN SUBSTANTIAL PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND [ECF 34]**

Before the Court is Defendants' Motion to Dismiss Plaintiff-Relator's Second Amended Complaint. ECF 18. The Court has read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **DENIES** in part and **GRANTS** in part the Motion.

## I. BACKGROUND

On May 24, 2022, Plaintiff Mahnaz Rahbar, M.D. ("Dr. Rahbar" or "Plaintiff") filed this *qui tam* lawsuit against Sterling Hospitalist Medical Group, Inc. ("Sterling"), Titanium Healthcare, Inc. ("Titanium"), and Does 1–20 (collectively, "Defendants"). ECF 1. On April 30, 2024, Plaintiff filed her Second Amended Complaint ("SAC"). ECF 30. Plaintiff alleges that Defendants impermissibly used her identity and medical licensure to commit Medi-Cal and Medicare fraud. *See generally id.*

### A. Factual Background[1]

Dr. Rahbar is an internal medicine doctor who has been licensed to practice in California since 2008. *Id.* ¶ 9. Dr. Rahbar worked for Sterling and Titanium from around November 16, 2018, to March 31, 2022.[2] *Id.* ¶ 52. "Sterling provides medical services to patients in Los

[1] The Court describes the factual background as alleged in Plaintiff's SAC and views all well-pleaded facts in the light most favorable to the plaintiff. Fed. R. Civ. Proc. 12(b)(6); *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[2] Although Sterling employed Dr. Rahbar, Plaintiff brings claims against both Sterling and

Angeles, County, principally to patients enrolled in Medi-Cal and Medicare HMO plans." *Id.*

During the time she was employed by Defendants, Dr. Rahbar treated patients in a clinic owned and operated by Titanium in downtown Los Angeles (the "Downtown Clinic"). *Id.* ¶ 53. Titanium also staffed the Downtown Clinic with a physician assistant. *Id.* "Most of Dr. Rahbar's patients were Medi-Cal recipients. Some of her patients were also 'dual eligibles,' meaning they were Medi-Cal *and* Medicare beneficiaries." *Id.* ¶ 54.

On September 2, 2021, Dr. Joe Jordan[3] emailed Dr. Rahbar informing her that the group would be opening a new office in West Covina and that someone from Titanium would be sending her a "form to acknowledge" but that there would be "no real change" to Plaintiff's duties. *Id.* ¶ 55. The following day, Dr. Rahbar received an email from a Titanium employee asking her to sign a letter informing the independent practice associations[4] and health insurance plan providers of the group's move to the new offices. *Id.* ¶ 56. "Shortly thereafter," Dr. Jordan spoke to Plaintiff about her being the provider "on paper" for patients at two Titanium owned clinics—the "West Covina Clinic" and the "Bell Gardens Clinic." *Id.* ¶ 57. "The vast majority of [the] patients [at those clinics] were Medi-Cal beneficiaries." *Id.* On November 1, 2021, Dr. Jordan texted Dr. Rahbar stating: "It really only involves a letter. There is no requirement to be there . . . Extra $$!" *Id.* "Dr. Rahbar refused to provide her consent to be listed as the provider for these patients." *Id.* ¶ 59.

On February 3, 2022, Dr. Rahbar learned that she had been listed as the provider for the West Covina Clinic and Bell Garden Clinic patient panels without her prior knowledge or consent. Dr. Rahbar learned this when "[a] new medical assistant asked Dr. Rahbar where she should send a mammogram report. Not recognizing the patients' name, Dr. Rahbar looked her up on the [electronic health records system ('EHR')]." *Id.* ¶ 78. On the EHR, Dr. Rahbar saw that she was listed as the ordering physician for the mammogram by Titanium, and that the patient had been seen in the West Covina Clinic by a nurse practitioner. *Id.* "Suspicious, Dr. Rahbar searched the EHR for other patients." *Id.* From a sample of around 240 reports for lab results

---

Titanium, alleging they act as "an integrated enterprise." The Court addresses the facts relating to the relationship between the Defendants in part A of the Discussion section, below.

[3] In addition to being Dr. Rahbar's supervisor at Sterling, Dr. Jordan served as Titanium's Chief Medical Officer and Director. The SAC uses alternate spellings ("Jordon" and "Jordan") to refer to this individual throughout. The Court will refer to him as "Dr. Jordan" for consistency.

[4] An independent practice association is an association of physicians that contracts to provide medical care to health maintenance organization ("HMO") members in the physicians' own offices." *Id.* ¶ 58.

and around 300 reports for blood work, Dr. Rahbar was listed as the ordering physician. *Id.* Dr. Rahbar had never agreed to be listed as the physician for these patients, she had not seen these patients, nor had she supervised any nurse practitioner or physician assistant who had reviewed them. *Id.* "Dr. Rahbar felt shocked and betrayed when she learned that Titanium, with Sterling's knowledge and consent, had been using her medical license—the source of her income and professional liability—to illegal [sic] Medicare and Medi-Cal for services despite her explicit instructions not to do so." *Id.* ¶ 79.

Dr. Rahbar eventually discovered that, four months prior to when Dr. Jordan initially asked Dr. Rahbar about being listed as the provider, "Titanium had already assigned these West Covina Clinic and Bell Garden Clinic patient panels to Dr. Rahbar" without her "knowledge or consent." *Id.* ¶ 65. "These patient panels consisted of individuals that Dr. Rahbar was supposedly responsible for treating, either personally or through the [lower-level staff] that she supervised." *Id.* "No other physician had been assigned to these patient panels." *Id.* Plaintiff alleges that "Sterling, through its agent, Dr. Joseph Jordan, had knowledge of and approved of, Titanium's use of Dr. Rahbar's medical license to fraudulently bill Medicare and Medi-Cal by submitting CMS Form 1500s to government payers for services she never performed herself, nor supervised the NMPs who did." *Id.*

On February 4, 2022, Dr. Rahbar wrote to Dr. Jordan:

> This was done months before you even discussed the subject with me. Even though I repeatedly communicated my lack of interest with you, you went against my wishes and still kept my name on the list. Labs and imaging results continue to be ordered in my name even after our conversations. These are on patients who I haven't seem, examined, written any orders on or discussed with anyone.

*Id.* ¶ 81.

On February 8, 2022, Dr. Rahbar met with John Lawson (Titanium's Chief Operating Officer), Dr. Jordan, and "Leslie" (Titanium's officer manager). *Id.* ¶ 82. During the meeting, Dr. Rahbar "demanded again to be removed from the patient panels." *Id.* On February 9, 2022, Dr. Rahbar "repeated her demand to be removed from the patient panels in writing to Dr. Jordan and Mr. Lawson." *Id.* ¶ 83. "On or about February 10, 2022, and February 11, 2022, Titanium finally notified two [independent practice associations] that Dr. Rahbar should be removed from the patient panels." *Id.* ¶ 84.

Around February 23, 2022, Dr. Rahbar's counsel "demanded in writing to Dr. Jordan and Gary Miller, Titanium's Chief Executive Officer, that Sterling and Titanium provide her a

'complete disclosure' of all patient assignments, so that she could discover whether she had been assigned to additional patient panels without her authorization." *Id.* ¶ 85. On March 21, 2022, Dr. Rahbar's counsel "repeated this demand in writing." *Id.* ¶ 86. On or about February 23, 2022, Sterling and Titanium "constructively discharged Dr. Rahbar from her job" due to "Titanium and Sterling's betrayal and their creation of an existential risk to Dr. Rahbar's license and livelihood." *Id.* ¶ 99. Dr. Rahbar's last day "was scheduled for March 31, 2022, so she could properly transition her patients to the care of other providers." *Id.*

### B. Procedural History

On May 24, 2022, Rahbar filed a federal complaint against Defendants. ECF 1. On November 30, 2023, the United States and the State of California (collectively, the "governments") notified the Court of their decision not to intervene in the matter. ECF 18. Even though the governments declined to intervene, they requested that the Plaintiff maintain this action in the name of the United States. *Id.* Also on November 30, 2023, the Court issued an order on the governments' decision not to intervene and unsealed the case, stating that "[s]hould the Plaintiff or defendants propose that this action be dismissed, settled, or otherwise discontinued, the parties shall provide the United States and California with notice of the same and the Court will provide the United States and California with an opportunity to be heard before ruling or granting its approval." *Id.* On March 21, 2024, Plaintiff filed a First Amended Complaint. ECF 25. On April 30, 2024, Plaintiff filed the operative SAC. ECF 30.

The SAC brings the following causes of action: (1) violation of the federal False Claims Act ("FCA") for presenting false claims, 31 U.S.C. § 3729(a)(l)(A); (2) violation of the FCA for making or using false records or statements material to payment or approval of false claims, 31 U.S.C. § § 3729(a)(l)(B); (3) violation of the FCA for retention of proceeds to which Defendants are not entitled, 31 U.S.C. § 3729(a)(l)(G); (4) violation of the FCA for conspiracy to commit violations, 31 U.S.C. § 3729(a)(l)(C); violation of California's False Claims Act ("CFCA") for presenting false claims, Cal. Gov. Code § 12651(a)(1); (6) violation of the CFCA for making or using false records or statements to obtain payment or approval of false claims, Cal. Gov. Code § 12651(a)(2); (7) violation of the CFCA for inadvertent submission of false claims, Cal. Gov. Code § 12651(a)(8); (8) violation of the CFCA for conspiracy, Cal. Gov. Code § 12651(a)(3); (9) constructive discharge in violation of public policy; (10) negligence; and (11) constructive discharge in violation of 31 U.S.C. § 3730(h)(1).

On May 21, 2024, Defendants filed a Motion to Dismiss the SAC entirely. ECF 34. Plaintiff opposed the Motion and Defendants replied. ECF 36; ECF 38. On September 20, 2024, the Court set the Final Pretrial Conference for February 12, 2026. ECF 42.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." "On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In other words, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

Defendants argue that all of Plaintiff's claims must be dismissed pursuant to Rule 12(b)(6). *See* ECF 34-1 at 9–10. Specifically, Defendants argue that Plaintiff has not pleaded her federal and state FCA causes of action with sufficient particularity, and that her conspiracy, constructive discharge, and negligence causes of action all fail to state a claim. *See id.* at 12–17.

### A. Federal and State False Claim Act Claims (Claims 1–8)

Defendants argue that Plaintiff has not pleaded her FCA causes of action (claims 1 through 4) and CFCA causes of action (claims 5 through 8) with sufficient particularity. *See id.* at 10–16. Specifically, Defendants argue Plaintiff does not assert who at Titanium and who at Sterling allegedly participated in the fraudulent scheme. *Id.* Liability under both the FCA and the CFCA requires a plaintiff to plead the following elements: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S., ex rel. Modglin v. DJO Global Inc.*, 114 F.Supp.3d 993 (2015) (citing *Unites States ex rel. Ruhe v. Masino Corp.*, 977 F. Supp. 2d 981, 991 (C.D. Cal. 2013)). Here, the Court finds Plaintiff has sufficiently pleaded these elements.

*First*, Plaintiff has alleged a false statement. False information provided as part of a Medicare payment can amount to a false claim for the purposes of the FCA. *See United States v. Mackby*, 261 F.3d 821, 826–27 (9th Cir. 2001) (explaining how providing false provider information on a 1500 form is a false claim for purposes of the FCA). Specifically, Plaintiff alleges that listing her as the provider for the West Covina and Bell Gardens patients in connection

with the Medicare and/or Medi-Cal insurance payments amounted to a false claim, because Dr. Rahbar never saw these patients or ordered any of the tests or other procedures that Sterling and Titanium had filed in her name. *See* ECF 30 ¶¶ 101–05 (Plaintiff argues, for example, that "Titanium knowingly presented the false claims to an officer or employee of the United States for nurse practitioner and physician assistant services when Titanium knew these individuals were not supervised by a physician. Further, Titanium knowingly submitted the false claims to an officer or employee of the United State[s] for laboratory tests and radiology examinations with [Plaintiff's] name as the 'ordering physician' or 'referring provider,' even though she had not ordered the tests or examinations, nor supervised the mid-levels who had.") The Court finds that these allegations are sufficiently factually supported to meet the first element of a false claim under the FCA and CFCA.

*Second*, Plaintiff has alleged scienter. Defendants argue that the SAC lacks specific factual allegations demonstrating that Dr. Jordan himself submitted the claims to the government. *See* ECF 34-1 at 11–14. However, it is not necessary for Dr. Rahbar to show that Dr. Jordan personally submitted these claims. Rather, it is sufficient for pleading purposes for Plaintiff to allege that Dr. Jordan assisted in the fraud. *See Mackby*, 261 F.3d at 827 ("The FCA reaches 'any person who knowingly *assisted in* causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government.' Thus, a person need not be the one who actually submitted the claim forms in order to be liable.") (citation omitted). Here, Plaintiff has successfully cleared this bar. *See, e.g.*, ECF 30 ¶¶ 17, 59–60 (alleging that Dr. Jordan directed and managed the "day-to-day management of Sterling providers" and that Dr. Jordan communicated with Plaintiff about listing her as the supervising physician for the West Covina and Bell Gardens Clinic despite knowing she would be unable to properly supervise the physician assistants and nurse practitioners in those offices).

*Third*, Plaintiff has alleged materiality. Defendants argue that Plaintiff's claims are not material because California law does not require a supervising physician to be in the same physical location as the healthcare providers she is overseeing. *See* ECF 34-1 at 12 (citing Cal. Bus. & Prof. Code § 2836.1(d)). While it is true that California law does not impose a co-location requirement, that does not negate Plaintiff's allegations that she had *no idea* that she was listed as the overseeing physician and that, had she been asked, she would have refused to serve in that role. *See generally* ECF 30. If Plaintiff's allegations are true, Defendants have both violated the California Business & Professions Code and put Dr. Rahbar's medical license at risk. *See Khan v. Medical Board*, 12 Cal. App. 4th 1834, 1842 (1993). Plaintiff's claims are therefore sufficiently material to survive dismissal.

*Fourth*, Plaintiff has alleged that the government paid for these false claims. The SAC

alleges that "Titanium submitted these fraudulent claims to Medi-Cal and Medicare on CMS Form 1500s for primary care visits on Sterling's behalf with Sterling's knowledge and permission." ECF 30 ¶ 67. "Medi-Cal and Medicare also prohibit the falsification of the 'referring provider' on CMS Form 1500 when ordering tests. Therefore, neither Medi-Cal nor Medicare would have paid these claims if they had known that [non-physician medical providers] were not supervised and that the 'referring provider' on the CMS 1500 had not ordered the test, nor supervised the [non-medical physician medical providers] that had." *Id.* ¶ 3. Plaintiff provides facts to support these allegations, such as the fact that "[l]ab results were sent to Titanium, as opposed to Sterling" and that progress notes from Sterling Providers state "Titanium Healthcare." *Id.* ¶ 22.

Plaintiff has plausibly pleaded each of the required elements of an FCA and CFCA claim. Accordingly, Defendants' Motion to Dismiss is **DENIED** as to the first, second, third, fifth, sixth, and seventh causes of action.

In addition to pleading violations of the FCA and CFCA, Plaintiff also pleads conspiracy under both statutes (claims 4 and 8). The FCA makes liable any person who "conspires to commit a violation" of the FCA. 31 U.S.C. § 3729(a)(1)(C). Defendants argue that Plaintiff's conspiracy claims are "defective" because "[t]here are no facts alleged to show that anyone at Sterling conspired with anyone at Titanium, or with any other person[,] to violate the FCA or CFCA." ECF 34-1 at 16. The Court disagrees. Plaintiff argues "Titanium performed acts, including falsifying medical records and submitting fraudulent documentation to the effect of the object of the conspiracy. Sterling performed acts, including approving of Titanium's falsification of medical records and submitting fraudulent documentation to effect the object of the conspiracy . . . ." ECF 30 at ¶¶ 119, 138. The Court finds that at this stage in the proceedings, Plaintiff's allegations, when considering the significant overlap between Sterling's and Titanium's staff, as well as the companies' close working relationship, support the inference that Defendants were working together in furtherance of a fraud. Accordingly, the Motion to Dismiss claims 4 and 8 is **DENIED**.

### B. Constructive Discharge (Claims 9, 11)

Plaintiff argues that, due to Defendants' fraudulent actions, she was forced to resign from her employment. *See* ECF 30 ¶¶ 140–46, 156–68. Defendants respond that "there are no allegations showing that Rahbar was discriminated against in any way, much less that she was discriminated against *because* she engaged in activity protected under the False Claims Act." ECF 34-1 at 13. Defendants further argue "there are no allegations supporting an inference that a reasonable person would have found working conditions so intolerable as to require a resignation. . . . [and] plaintiff's contract with Sterling established an independent contractor

relationship, not an employee-employer relationship." ECF 38 at 10.

Under the FCA, it is illegal for an employer to "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730(h) (cleaned up). Constructive discharge occurs when a "reasonable person in [the employee's] position would have felt that [they were] forced to quit *because of* intolerable and discriminatory working conditions." *Huskey v. City of San Jose*, 204 F.3d 893, 900 (9th Cir. 2000) (emphasis added). Plaintiff's "claims for retaliation under the FCA and CFCA must allege that (1) she was engaged in protected conduct; (2) [defendant] knew she engaged in such conduct; and (3) [defendant] retaliated against her because of the conduct." *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Here, Defendants correctly point out that although identifying and refusing to participate in a fraudulent scheme would qualify as protected activity under section 3730(h)(1), Plaintiff has not alleged that Defendants "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against" Plaintiff after she spoke out about the fraudulent activity. Rather, Plaintiff appears to have decided that she would rather not work for an employer who would use her identity and licensure in furtherance of insurance fraud. While this is a reasonable determination, it does not support a cause of action for constructive discharge. It is not enough for Plaintiff to allege that the work conditions are intolerable due to the existence of the fraud itself—she must instead allege (and present facts to support) that the work conditions *became* intolerable after she reported the illegal behavior. Here, Plaintiff has not pleaded facts to support this cause of action.

Accordingly, the Motion to Dismiss Plaintiff's constructive discharge claims is **GRANTED**.

### C. Negligence Per Se (Claim 10)

Defendants argue that Plaintiff's negligence claim fails because Plaintiff has not adequately alleged injury or alleged the predicate statutory violation with particularity. ECF 34-1 at 20.

In order to allege the tort of negligence, "[t]he traditional elements of duty, breach of duty, causation, and damages apply. Whether a defendant owes a duty of care is a question of law." *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1071–72 (1992). "Where a statutory standard establishes the defendant's duty, proof of the defendant's violation of a statutory standard of conduct raises a presumption of negligence that may be rebutted only by evidence establishing a

justification or excuse for the statutory violation. This rule, generally known as the doctrine of negligence per se, means that where the court has adopted the conduct prescribed by statute as the standard of care for a reasonable person, a violation of the statute is presumed to be negligence." *Spates v. Dameron Hospital Assn.*, 114 Cal. App. 4th 208, 218 (2003); *see* Cal. Evid. Code § 669 (creating a presumption of negligence if "(1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."). "The first two elements are questions of fact, while the latter two are questions of law." *Id.*

Plaintiff alleges that Defendants violated California Penal Code § 530.5 "by stealing Plaintiff's identity for the improper purpose of defrauding Medicare and Medi-Cal." ECF 30 ¶ 148. Defendants counter that "[t]here are no allegations in the [SAC] that come close to detailing the level of specificity necessary to state a claim for violation of Penal Code § 530.5." *Id.* at 11.

The Court agrees with Defendants: Plaintiff's allegations regarding the negligence per se cause of action are conclusory, and therefore must be dismissed. *See, e.g.*, ECF 30 ¶¶ 149–155 ("Titanium and Sterling owed a duty to Plaintiff to exercise ordinary care with respect to not appropriating Plaintiff's identify for an improper purpose . . . Titanium and Sterling's negligence was a substantial factor in causing harm to Plaintiff."). The Court is not persuaded that Plaintiff's injury resulted from an occurrence of the nature of which California Penal Code § 530.5 was designated to prevent. Plaintiff provides no rationale for how or why a statute seemingly intending to penalize identity fraud applies to misrepresentations on CMS Form 1500s.

Accordingly, Defendants' Motion to Dismiss Plaintiff's negligence cause of action (Claim 10) is **GRANTED**.

### D. Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that once the time for amending a pleading as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In general, "[t]he court should freely give leave when justice so requires." *Id.*; *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citation omitted). In *Foman v. Davis*, the Supreme Court set forth the following factors a district court should consider in deciding whether to grant leave to amend:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-03520-MRA-PD | Date | March 31, 2025 |
| Title | United States of America et al. v. Sterling Hospitalist Medical Group, Inc. et al. | | |

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

371 U.S. 178, 182 (1962). "Not all of the factors merit equal weight." *Eminence Cap., LLC v. Aspen, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* Dismissal with prejudice is only appropriate where the complaint could not be saved by any amendment. *Id.*

Here, the Court finds that Defendants will not be prejudiced by further amendment and that it is possible that the deficiencies identified herein "can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)). Accordingly, the Court **GRANTS** Plaintiff leave to amend the pleading, correcting the deficiencies identified herein in a manner consistent with all Rule 11 obligations.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is:

1. **DENIED** as to all claims for violations of the federal False Claims Act and the California False Claims Act;

2. **GRANTED with leave to amend** as to the claims for constructive discharge; and

3. **GRANTED with leave to amend** as to the claim of negligence per se.

**IT IS SO ORDERED.**

- : -

Initials of Deputy Clerk gga